1  Robert V. Prongay (#270796)
   Charles H. Linehan (#307439)
2  Pavithra Rajesh (#323055)
   **GLANCY PRONGAY & MURRAY LLP**
3  1925 Century Park East, Suite 2100
   Los Angeles, CA 90067
4  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
5  Email: info@glancylaw.com
6
7  *Counsel for Plaintiff Cheryl Huang*
8  [Additional Counsel on Signature Page]
9
                  **UNITED STATES DISTRICT COURT**
10
                **NORTHERN DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| CHERYL HUANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION, ROBERT H. SWAN, GEORGE S. DAVIS,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>DEMAND FOR JURY TRIAL |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Plaintiff Cheryl Huang ("Plaintiff"), individually and on behalf of all others similarly

2  situated, by and through her attorneys, alleges the following upon information and belief, except as

3  to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's

4  information and belief is based upon, among other things, her counsel's investigation, which

5  includes without limitation: (a) review and analysis of regulatory filings made by Intel Corporation

6  ("Intel" or the "Company") with the United States ("U.S.") Securities and Exchange Commission

7  ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by

8  Intel; and (c) review of other publicly available information concerning Intel.

9                          **NATURE OF THE ACTION AND OVERVIEW**

10    1.    This is a class action on behalf of persons and entities that purchased or otherwise

11  acquired Intel securities between April 23, 2020 and July 23, 2020, inclusive (the "Class Period"),

12  seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

13    2.    Intel is a technology company that provides computing, networking, data storage,

14  and communication solutions worldwide. It operates through Data Center Group, Internet of Things

15  Group, Non-Volatile Memory Solutions Group, Programmable Solutions Group, Client Computing

16  Group, and All Other segments.

17    3.    According to Intel, its 7-nanometer CPU technology is the next generation following

18  Intel's 10-nanometer technology. Intel claims that 7-nanometer technology offers double the area

19  efficiency of 10-nanometer products, and will offer 20% higher performance per watt. In May 2019,

20  Intel projected to ship its first 7-nanometer products in 2021.

21    4.    On July 23, 2020, after the market closed, Intel disclosed production delays for its 7-

22  nanometer products after the Company had "identified a defect mode in our seven-nanometer

23  process that resulted in yield degradation."

24    5.    On this news, the Company's share price fell $9.81, or approximately 16%, to close

25  at $50.59 per share on July 24, 2020, on unusually heavy trading volume.

26    6.    Throughout the Class Period, Defendants made materially false and/or misleading

27  statements, as well as failed to disclose material adverse facts about the Company's business,

28  operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Intel had

identified a defect mode in its 7-nanometer process that resulted in yield degradation; (2) that, as a result, the Company would experience a six-month delay in its production schedule for 7-nanometer products; (3) that Intel was reasonably likely to rely on third-party foundries for manufacturing its 7-nanometer products; (4) that, as a result of the foregoing, Intel was reasonably likely to lose market share to its competitors who are already selling 7-nanometer products; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

12.     Plaintiff Cheryl Huang, as set forth in the accompanying certification, incorporated by reference herein, purchased Intel securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Intel is incorporated under the laws of Delaware with its principal executive offices located in Santa Clara, California.  Intel's common stock trades on the NASDAQ exchange under the symbol "INTC."

14.     Defendant Robert H. Swan ("Swan") was the Chief Executive Officer ("CEO") of the Company at all relevant times.

15.     Defendant George S. Davis ("Davis") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

16.     Defendants Swan and Davis (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

**SUBSTANTIVE ALLEGATIONS**

**Background**

17.     Intel is a technology company that provides computing, networking, data storage, and communication solutions worldwide. It operates through Data Center Group, Internet of Things

1   Group, Non-Volatile Memory Solutions Group, Programmable Solutions Group, Client Computing

2   Group, and All Other segments.

3        18.     According to Intel, its 7-nanometer CPU technology is the next generation following

4   Intel's 10-nanometer technology. Intel claims that 7-nanometer technology offers double the area

5   efficiency of 10-nanometer products, and will offer 20% higher performance per watt. In May 2019,

6   Intel projected to ship its first 7-nanometer products in 2021.

7   **Materially False and Misleading**

8   **Statements Issued During the Class Period**

9        19.     The Class Period begins on April 23, 2020. On that day, the Company announced its

10   first quarter 2020 financial results in a press release that stated, in relevant part:

11   
12   - First-quarter revenue was $19.8 billion, up 23% year-over-year (YoY). Data-centric revenue* grew 34 percent and PC-centric revenue grew 14 percent YoY.

13   - First-quarter GAAP earnings-per-share (EPS) was $1.31, up 51 percent YoY; non-GAAP EPS of $1.45 was up 63 percent.

14   
15   - Generated $6.2 billion cash from operations and $2.9 billion of free cash flow while strengthening liquidity with $10.3 billion in new debt and suspension of share buybacks.

16   
17   - Expecting second-quarter revenue of $18.5 billion; GAAP EPS of $1.04 and non-GAAP EPS of $1.10; not providing full-year guidance given significant economic uncertainty.

18        20.     On April 24, 2020, Intel filed its quarterly report on Form 10-Q with the SEC for the

19   period ended March 28, 2020, affirming the previously reported financial results. The report

20   incorporated by reference the risk factors stated in the 2019 annual report filed with the SEC on

21   January 24, 2020. Specifically, Intel stated, in relevant part:

22       **We face significant competition.** . . . Our products primarily compete based on
23   performance, energy efficiency, integration, ease-of-use, innovative design, features, price, quality, reliability, security, software ecosystem and developer support, ***time-to-market, reliable product roadmap execution,*** brand recognition, customer
24   support and customization, and availability. The importance of these factors varies by product—for example, performance is a key competitive factor for data center
25   platform products, and failure to introduce new products with performance
26   advantages can harm our competitive position and market segment share in our DCG business. For our memory products, price, density, and non-volatility are among the
27   most important competitive factors. ***We will not realize our strategic goal to become the leading end-to-end provider for the new data world if our products do not meet***
28

*our customers' requirements across these factors in an increasingly competitive landscape*.

\*      \*      \*

Most of our competitors rely on third-party foundries, such as Taiwan Semiconductor Manufacturing Company, Ltd. or Samsung Electronics Co., Ltd., and subcontractors for manufacture and assembly and test of their semiconductor components and products. As an IDM, we have higher capital expenditures and R&D spending than many of our "fabless" competitors. We also face new sources of competition as a result of changes in industry participants through, for example, acquisitions or business collaborations, as well as new entrants, including in China, which could have a significant impact on our competitive position.

\*      \*      \*

To compete successfully, we must maintain a successful R&D effort, develop new products and production processes, and improve our existing products and processes, all ahead of competitors. We are focusing our R&D efforts across six engineering pillars: process technology, architecture, memory, interconnect, security, and software. These include ambitious initiatives, such as our unified oneAPI portfolio of developer tools, and we cannot guarantee that all of these efforts will deliver the benefits we anticipate. *For example, to the extent we do not timely introduce new manufacturing process technologies that improve transistor density with sufficient manufacturing yields and operational efficiency, relative to competing foundry processes, we can face cost and product performance disadvantages.* Similarly, to the extent our R&D efforts do not timely produce semiconductor designs for our platform products with improvements in areas like performance, performance per watt, die utilization, and core counts, and with new features such as optimizations for AI and other workloads, our competitive position can be harmed.

\*      \*      \*

If we are not able to compete effectively, our financial results will be adversely affected, including reduced revenue and gross margin, and we may be required to accelerate the write-down of the value of certain assets.

21.     The same report also stated, with respect to development of new products:

Our efforts to innovate involve significant expense and carry inherent risks, including difficulties in designing and developing next-generation process technologies, and investments in manufacturing assets and facilities that are made years in advance of the process node introduction. We cannot guarantee that we will realize the expected benefits of next-generation process technologies, including the expected cost and density advantages, or that we will achieve an adequate return on our capital investments, particularly as development of new nodes has grown increasingly expensive.

***Risks inherent in the development of next-generation process technologies include production timing delays, lower-than-anticipated manufacturing yields, longer manufacturing throughput times, and product defects and errata.*** Production timing delays have at times caused us to miss customer product design windows, which can result in lost revenue opportunities and damage to our customer relationships. Furthermore, when the introduction of next-generation process nodes is delayed, including additional competitive features in our products can result in larger die size products, manufacturing supply constraints, and increased product costs. Lower manufacturing yields and longer manufacturing throughput times, compared to previous process nodes, can increase our product costs and adversely affect our gross margins, and can contribute to manufacturing supply constraints. In addition, as the die size of our products has increased and our manufacturing process nodes have shrunk, our products and manufacturing processes have grown increasingly complex and more susceptible to product defects and errata, which can also contribute to production timing delays and lower yields.

\*          \*          \*

Production issues periodically lead to increased costs and affect our ability to meet product demand, which can adversely impact our business and the results of operations. ***In addition, to the extent we face delays in the timing of our product introductions, we could become less competitive and lose revenue opportunities,*** and our gross margin could be adversely affected because we incur significant costs up front in the product development stage and earn revenue to offset these costs over time.

22.    The above statements identified in ¶¶ 19-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Intel had identified a defect mode in its 7-nanometer process that resulted in yield degradation; (2) that, as a result, the Company would experience a six-month delay in its production schedule for 7-nanometer products; (3) that Intel was reasonably likely to rely on third-party foundries for manufacturing its 7-nanometer products; (4) that, as a result of the foregoing, Intel was reasonably likely to lose market share to its competitors who are already selling 7-nanometer products; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

23.     On July 23, 2020, after the market closed, Intel reported its second quarter 2020 financial results in a press release. Therein, the Company disclosed production delays for its 7-nanometer products. Specifically, the press release, stated:

> The company's 7nm-based CPU product timing is shifting approximately six months relative to prior expectations. The primary driver is the yield of Intel's 7nm process, which based on recent data, is now trending approximately twelve months behind the company's internal target.

24.     During a conference call held the same day, Intel's CEO, defendant Swan, stated that the Company was considering outsourcing production to a third-party foundry. He stated:

> We are seeing an approximate six-month shift in our seven-nanometer-based CPU product timing relative to prior expectations. The primary driver is the yield of our seven-nanometer process, which, based on recent data, is now trending approximately 12 months behind our internal target. We have identified a defect mode in our seven-nanometer process that resulted in yield degradation. We've root caused the issue and believe there are no fundamental roadblocks.
>
> ***But we have also invested in contingency plans to hedge against further schedule uncertainty.*** We're mitigating the impact of the process delay on our product schedules by leveraging improvements in design methodology such as die disaggregation and advanced packaging. . . .We will continue to invest in our future process technology road map, but we will be pragmatic and objective in deploying the process technology that delivers the most predictability and performance for our customers, ***whether that be on our process, external foundry process, or a combination of both***.

25.     On this news, the Company's share price fell $9.81, or approximately 16%, to close at $50.59 per share on July 24, 2020, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Intel securities between April 23, 2020 and July 23, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Intel's common shares actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.   Millions of Intel common stock were traded publicly during the Class Period on the NASDAQ.   Record owners and other members of the Class may be identified from records maintained by Intel or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Intel; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

1  individual litigation makes it impossible for members of the Class to individually redress the wrongs

2  done to them.  There will be no difficulty in the management of this action as a class action.

3  **UNDISCLOSED ADVERSE FACTS**

4  32.  The market for Intel's securities was open, well-developed and efficient at all

5  relevant times.  As a result of these materially false and/or misleading statements, and/or failures to

6  disclose, Intel's securities traded at artificially inflated prices during the Class Period.  Plaintiff and

7  other members of the Class purchased or otherwise acquired Intel's securities relying upon the

8  integrity of the market price of the Company's securities and market information relating to Intel,

9  and have been damaged thereby.

10  33.  During the Class Period, Defendants materially misled the investing public, thereby

11  inflating the price of Intel's securities, by publicly issuing false and/or misleading statements and/or

12  omitting to disclose material facts necessary to make Defendants' statements, as set forth herein,

13  not false and/or misleading.  The statements and omissions were materially false and/or misleading

14  because they failed to disclose material adverse information and/or misrepresented the truth about

15  Intel's business, operations, and prospects as alleged herein.

16  34.  At all relevant times, the material misrepresentations and omissions particularized in

17  this Complaint directly or proximately caused or were a substantial contributing cause of the

18  damages sustained by Plaintiff and other members of the Class.  As described herein, during the

19  Class Period, Defendants made or caused to be made a series of materially false and/or misleading

20  statements about Intel's financial well-being and prospects.  These material misstatements and/or

21  omissions had the cause and effect of creating in the market an unrealistically positive assessment

22  of the Company and its financial well-being and prospects, thus causing the Company's securities

23  to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or

24  misleading statements during the Class Period resulted in Plaintiff and other members of the Class

25  purchasing the Company's securities at artificially inflated prices, thus causing the damages

26  complained of herein when the truth was revealed.

27

28

**LOSS CAUSATION**

35.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36.     During the Class Period, Plaintiff and the Class purchased Intel's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

37.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Intel, their control over, and/or receipt and/or modification of Intel's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Intel, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**

**(FRAUD-ON-THE-MARKET DOCTRINE)**

38.     The market for Intel's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Intel's securities traded at artificially inflated prices during the Class Period. On June 5, 2020, the Company's share price closed at a Class Period high of $64.34 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Intel's securities and market information relating to Intel, and have been damaged thereby.

39.     During the Class Period, the artificial inflation of Intel's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Intel's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Intel and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40.     At all relevant times, the market for Intel's securities was an efficient market for the following reasons, among others:

(a)     Intel shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Intel filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Intel regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Intel was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for Intel's securities promptly digested current information regarding Intel from all publicly available sources and reflected such information in Intel's share price. Under these circumstances, all purchasers of Intel's securities

1   during the Class Period suffered similar injury through their purchase of Intel's securities at

2   artificially inflated prices and a presumption of reliance applies.

3         42.    A Class-wide presumption of reliance is also appropriate in this action under the

4   Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

5   because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or

6   omissions.   Because this action involves Defendants' failure to disclose material adverse

7   information regarding the Company's business operations and financial prospects—information that

8   Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.

9   All that is necessary is that the facts withheld be material in the sense that a reasonable investor

10   might have considered them important in making investment decisions.  Given the importance of

11   the Class Period material misstatements and omissions set forth above, that requirement is satisfied

12   here.

13                  **NO SAFE HARBOR**

14         43.    The statutory safe harbor provided for forward-looking statements under certain

15   circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The

16   statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

17   In addition, to the extent certain of the statements alleged to be false may be characterized as forward

18   looking, they were not identified as "forward-looking statements" when made and there were no

19   meaningful cautionary statements identifying important factors that could cause actual results to

20   differ materially from those in the purportedly forward-looking statements. In the alternative, to the

21   extent that the statutory safe harbor is determined to apply to any forward-looking statements

22   pleaded herein, Defendants are liable for those false forward-looking statements because at the time

23   each of those forward-looking statements was made, the speaker had actual knowledge that the

24   forward-looking statement was materially false or misleading, and/or the forward-looking statement

25   was authorized or approved by an executive officer of Intel who knew that the statement was false

26   when made.

27

28

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

44.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Intel's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Intel's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Intel's financial well-being and prospects, as specified herein.

48.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Intel's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Intel and its business operations and future prospects in light of the

circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Intel's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Intel's securities was

1    artificially inflated during the Class Period.  In ignorance of the fact that market prices of the

2    Company's securities were artificially inflated, and relying directly or indirectly on the false and

3    misleading statements made by Defendants, or upon the integrity of the market in which the

4    securities trades, and/or in the absence of material adverse information that was known to or

5    recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during

6    the Class Period, Plaintiff and the other members of the Class acquired Intel's securities during the

7    Class Period at artificially high prices and were damaged thereby.

8           52.     At the time of said misrepresentations and/or omissions, Plaintiff and other members

9    of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other

10   members of the Class and the marketplace known the truth regarding the problems that Intel was

11   experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class

12   would not have purchased or otherwise acquired their Intel securities, or, if they had acquired such

13   securities during the Class Period, they would not have done so at the artificially inflated prices

14   which they paid.

15          53.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act

16   and Rule 10b-5 promulgated thereunder.

17          54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

18   other members of the Class suffered damages in connection with their respective purchases and

19   sales of the Company's securities during the Class Period.

20                                    **SECOND CLAIM**
                        **Violation of Section 20(a) of The Exchange Act**
21                         **Against the Individual Defendants**

22          55.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully

23   set forth herein.

24          56.     Individual Defendants acted as controlling persons of Intel within the meaning of

25   Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their

26   ownership and contractual rights, participation in, and/or awareness of the Company's operations

27   and intimate knowledge of the false financial statements filed by the Company with the SEC and

28   disseminated to the investing public, Individual Defendants had the power to influence and control

1 and did influence and control, directly or indirectly, the decision-making of the Company, including

2 the content and dissemination of the various statements which Plaintiff contends are false and

3 misleading. Individual Defendants were provided with or had unlimited access to copies of the

4 Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be

5 misleading prior to and/or shortly after these statements were issued and had the ability to prevent

6 the issuance of the statements or cause the statements to be corrected.

7      57.     In particular, Individual Defendants had direct and supervisory involvement in the

8 day-to-day operations of the Company and, therefore, had the power to control or influence the

9 particular transactions giving rise to the securities violations as alleged herein, and exercised the

10 same.

11      58.     As set forth above, Intel and Individual Defendants each violated Section 10(b) and

12 Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as

13 controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

14 As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of

15 the Class suffered damages in connection with their purchases of the Company's securities during

16 the Class Period.

17 **PRAYER FOR RELIEF**

18     WHEREFORE, Plaintiff prays for relief and judgment, as follows:

19     (a)     Determining that this action is a proper class action under Rule 23 of the Federal

20 Rules of Civil Procedure;

21     (b)     Awarding compensatory damages in favor of Plaintiff and the other Class members

22 against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

23 wrongdoing, in an amount to be proven at trial, including interest thereon;

24     (c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

25 action, including counsel fees and expert fees; and

26     (d)     Such other and further relief as the Court may deem just and proper.

27 **JURY TRIAL DEMANDED**

28     Plaintiff hereby demands a trial by jury.

CLASS ACTION COMPLAINT
16

1    DATED:  July 28, 2020                    **GLANCY PRONGAY & MURRAY LLP**

2                                             By:     s/ Charles H. Linehan

3                                             Robert V. Prongay
                                              Charles H. Linehan
4                                             Pavithra Rajesh
                                              1925 Century Park East, Suite 2100
5                                             Los Angeles, California 90067
                                              Telephone: (310) 201-9150
6                                             Facsimile: (310) 201-9160
                                              Email: info@glancylaw.com
7

8                                             **THE LAW OFFICES OF FRANK R. CRUZ**
                                              Frank R. Cruz (#216587)
9                                             1999 Avenue of the Stars, Suite 1100
                                              Los Angeles, CA 90067
10                                            Telephone: (310) 914-5007

11
                                              *Counsel for Plaintiff*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SWORN CERTIFICATION OF PLAINTIFF**

**INTEL CORPORATION SECURITIES LITIGATION**

I, Cheryl Huang, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Intel Corporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Intel Corporation securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

7/27/2020
_____
Date

DocuSigned by:

*Cheryl Huang*
8495857BAB8F4F4...
_____
Cheryl Huang

**Cheryl Huang's Transactions in Intel Corporation (INTC)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 7/22/2020 | Bought | 299 | $61.1550 |
| 7/22/2020 | Bought | 1 | $61.1600 |
| 7/22/2020 | Bought | 300 | $61.1764 |
| 7/23/2020 | Bought | 300 | $60.8772 |
| 7/23/2020 | Bought | 300 | $60.9150 |
| 7/23/2020 | Bought | 300 | $61.3650 |
| 7/23/2020 | Bought | 300 | $61.5950 |
| 7/23/2020 | Bought | 300 | $61.4550 |
| 7/23/2020 | Bought | 300 | $61.3937 |
| 7/23/2020 | Bought | 300 | $61.3250 |
| 7/23/2020 | Bought | 300 | $61.1299 |
| 7/23/2020 | Bought | 300 | $61.1050 |
| 7/23/2020 | Bought | 300 | $61.0950 |
| 7/23/2020 | Bought | 300 | $60.9050 |
| 7/23/2020 | Bought | 300 | $60.9050 |
| 7/23/2020 | Bought | 300 | $60.5900 |
| 7/23/2020 | Bought | 200 | $60.6100 |